We'll move to our second case this morning, Felix Franco and Franco Express v. Richland Refrigerated Solutions. Mr. is it is it Guyon? Good morning. May it please the court and counsel. My name is Emanuel Guyon and Judge Flom, can you hear me? I have a soft voice. Now you mentioned to the other fellow that he, can you hear me? Yeah I can hear you fine. I'm sorry I just want to make sure. Those instruments only record, they do not amplify. Okay. So this is a large courtroom, so it's important for advocates to speak up. Thank you. I know you're familiar with the facts that I said in the brief and I'm not going to go over them, but preliminarily what I want to say is that there basically are two cases before this court. The plaintiff says the the injury that he received on April 10th of 2019 came from the events where he was sleeping in this reefer, this over-the-road tractor, and was struck from the rear, ejected, fell down, hit the dashboard, and then was impaled on a three-point corner of a refrigerator that caused the problems with his back. The defendants tried this case on the basis of a pre-existing condition of neurogenic claudication, and that's a fancy term for, the foramen is the opening in the spine, the nerves are in the foramen, and over a period of time there's a growth in the bone structure called lamina, and when you, if it gets too close to the nerves and people move it when you get older, that evokes a pain response. So we have two different theories of the case. Mr. Franco was a truck driver for 32 years, starting in 1989. In 2017 he was getting a little bit of a backache, so he went to his primary care physician and said, you know, my back is hurting. The doctor said, well look, take this tramadol whenever you need it. So he did. It was a, as, it wasn't a prescription, regular, but whenever you need it. And the way he conducted his business, it was, he would leave our, my hometown of Streeter, drive to Green Bay, Wisconsin, pick up cheese, go to Houston and Uvalde, Texas, take cucumbers and tomatoes to Green Bay, and he did that route for many, many years. He also, when that wasn't available, he got to the- Mr. Guyon, if I could interrupt. We've reviewed the briefs and we're aware of the facts as they were litigated at trial, and this was a causation case, it's clear, and it was submitted to the jury as such, and so it would be helpful if you would identify what error you're resting on in, in the district court, because the jury found against you that there was no causation here, and that was the end of the case. Thank you, Your Honor. What happened, he was ejected from that reefer on April 10th of 2019. He sought medical advice and was told that they would try conservative treatment, but if it didn't work, he'd have to have it in operation, and that was this translumbar intervertebral fusion, and that eventually happened where he had to do that. They had to do the surgery. When we had the trial, at the end of the evidence, I filed a written 50A motion asking the court to direct the verdict for plaintiff. The court did not act on it. The jury adjourned, went out, came back, no award. So then I filed a 50B motion. The judge ruled on both of those at the same time and said I failed to recite the defense to the action of the 410 when Mr. Hussain rammed the back of the trailer and caused this ejection, but then the defense got up and said they filed a motion for directed verdict. So what I was, if I was deficient, the defense provided the information so the court would rule. He still denied the 50B motion. Now, Your Honor, to answer your direct question, I think the manifest way of the evidence is in favor of the plaintiff. The court should have directed a verdict, and I think it was error to do so, and I think the court caused a lot of problems with the jury instruction. I submitted a special verdict form that at the pretrial conference, and the judge did not want to but a little bit different, and at the instruction conference before the jury retired, judge gave conflicting instructions. He said he, on the first day of trial, he told the jury that the defendant had been admitted liability to what? The 410 events or to the 32 year? Actually, there wasn't an admission of causation was the issue again at trial, causation and damages. Okay, he also said that the defendant was liable. The court said that to the venner, but then when he gave the final jury instruction, he said he talked about a cause and used it in the singular, but the actual instructions started talking about there could be other causes. Well, what could be the other causes? It could only be that I did not see an instructional error claim in the briefs. The instruction that the court gave on causation was textbook Wisconsin causation law. I think the jury was misled though because he was telling two different things. In what way? Because it started out by saying the defendant was liable for what happened, and then he started and said that there could be a not only a cause, but there could be other causes. Well, what could be the other other cause was a 32 year neurogenic claudication problem. Mr. Guyant, can you point me, and perhaps I just missed it, can you point me in the record where the judge and instructed the jury that the defendant was liable for what had happened? In the introductory, I do have it I think attached to the main brief, a copy of the transcript. I don't have in front of me, but there is, he said that, he said that defendant is liable. The court said that. Liable for what? The 410 events or for the 32 year developing condition of neurogenic claudication? I don't see how anybody could hold him liable for or how he could admit liability for the 32 year thing. It had to be for the 410 events. I think that confused the jury. As far as proximate cause is concerned, my final argument, I made a comment about finding proximate cause, which again came out of the jury instructions. Actually, wrong. Wisconsin doesn't treat proximate cause as a jury question for the court, in fact, doesn't use the concept of proximate cause. Wisconsin follows the for negligence law and causation. So there's cause in fact and there's legal cause and the court addresses the question of legal cause, not the jury. That's why your argument was about proximate cause was excluded, because that's not a concept that goes to a jury in Wisconsin. But if I was wrong about that, it was corrected by the judge, right? No, proximate cause is not a negligence law. Long line of cases. Wisconsin follows the dissent in Paul's graph, not the majority opinion. Your Honor, the judge said I'll handle proximate cause. He said proximate cause is not an issue here. Okay, all right. The court handles questions of legal causation as a matter of public policy. The medical evidence, Dr. Bauer, the respondents, the medical experts said the surgery was done only for the neurogenic claudication. Dr. Weiss, preparatory to the medical, to the operation that he was going to have to have the TLIF installed, they did an MRI. And he very detailed, detailed the neurogenic claudication in the plaintiff. Six months later he had the surgery. Five months later he did another MRI looking at the neurogenic claudication. The medical evidence in both cases shows no change in the neurogenic claudication. So when Dr. Bauer says they did the operation only for the neurogenic claudication, it's exactly the same before, seven months before surgery and five months after. So the surgery had to have been done only for installing the TLIF, trying to correct the problems from the events of December or April 10th of 2019. That's all I have to say. If you have any questions, I'll be happy. Thank you. Okay, thank you. Mr., is it Kuisner? Kuisner, yes. Kuisner, thank you. Your Honor, Francis P. Kuisner, I go by Pat. May it please the court. This was a three-day jury trial tried on diversity, jurisdiction applying Wisconsin law. Defendant admitted negligence. The jury was asked to decide whether the accident on April 10th, 2019 was a cause of any injuries that led to plaintiff's back surgery two years later. This case arose out of a low-speed motor vehicle accident. The plaintiff did not complain of any injuries at the scene. He continued to drive down to Texas and over the next two years he continued to operate his business as a truck driver, driving regularly. My understanding is the jury was out ten minutes? The jury was out ten minutes. I would, you don't want to speculate, but if they had some questions, normally a jury will ask a question of the court. Can you clarify an instruction? There was no question. They came to their decision right away. I this was a classic jury question. You had three highly qualified doctors who specialize in complex spinal surgery. Two of the doctors, Dr. Dinh, the treating doctor, and Dr. Bauer, the defendant's retained expert, were of the opinion that the plaintiff's condition was entirely degenerative and he would have needed this surgery regardless of the accident. Dr. Alexander Ghanayim, the plaintiff's retained expert, disagreed. He was of the opinion that the accident was a contributing factor. Again, this is a classic question for the jury to decide. Counsel, did the judge, Mr. Ghanayim says the judge told the jury that the defendant did not contest liability or had admitted liability. Does that appear anywhere in the record? Your Honor, I think I know that there was a statement to that effect, but it has to be taken in the context and I can read you the entire statement. In the preliminary instructions to the jury, the judge stated Richland admits that its driver was negligent in hitting Franco's truck and that Richland is legally responsible for the negligence of its driver, but the parties dispute how much Franco was back was injured by the accident requiring surgery and preventing him from continuing his job as a truck driver. Richland alleges that any injuries to Franco's back existed before the accident and were not aggravated by the accident. You will not have to decide the issue of liability in this case. Plaintiff's only claim against Richland is for negligence and as already noted, Richland concedes its driver was negligent. Your job as jurors will be to decide what damages, if any, Richland's driver caused plaintiff to suffer. That's in docket 157 page 47. So in that context, my suggestion to the court is those comments were perfectly consistent with the jury instructions the jury was quoted from basically paraphrase the Wisconsin Supreme Court in the Emmer's case with regard to causation. Well it might have been helpful if the judge had mentioned that causation was the focus of the trial, not just damages, but you know that's not a reversible error. I mean the judge didn't explain that there's an additional element to liability and that is causation and that's the entire focus of this trial as I understand it. And it was the focus of the closing argument, it certainly was my closing argument. And the focus of the jury instructions and so forth. Yes, yes. I mean the bottom line is under 50A and he acknowledged that there was evidence presented on behalf of the plaintiff to support his claim on causation and and damages but the court indicated that the plaintiff disregarded the abundance of evidence that the defendants offered to the contrary. Again that's a classic jury question and there's no basis to rule as a matter of law to grant judgment as a matter of law under those under those circumstances. The jury was not confused based upon the two instructions that I just alluded to, the final instruction. I won't read it to you but if you want me to read it to you I will. But it was perfectly consistent, the jury didn't ask any questions and it was out for 10 minutes. I think it's mere speculation that the jury was confused. Counsel may mention in the brief, his brief, that he was unfairly prejudiced by the judge's refusal to allow two demonstrative exhibits. At the pretrial conference the plaintiff showed the judge four diagrams of the human spine. The judge indicated he would show the jury two of the diagrams. There's no medical testimony why the other two had to be shown to the jury and why would would have made a difference in the case. Obviously it didn't make a difference because they're out for 10 minutes and I doubt whether they even looked at any demonstrative exhibits during that 10 minutes. Your Honor, if there's any questions that you have I will try to answer them otherwise I'd ask that you affirm the verdict of the district court and the judgment of the district court. Thank you. Thank you. Anything further Mr. Guyon? Your Honor, again the collision was on 4-10 of 2019. While he was driving his truck completing his job obligation three days later he had to stop and lay on the floor of his truck because he was in such pain. And then a similar incident happened on in May of 2017. I think that's close enough that there's a causal connection as to what happened. Dr. Ghanaian, who's the chairperson of the Department of Orthopedic Surgery, a spine surgeon, said that the surgery that was done on Mr. Franco was correct and that was a proper way to correct the problems that he now has. And it hasn't turned out as well as it should but it's the best they can do with the technology they have today. So if you have any other questions I'll be happy to answer. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement and before we call our third case, the court will be in recess.